IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSE
WESTERN DIVISION

---

PAMELA MOSES and
TAJ' MOSES,

       Plaintiffs,

vs.                                    No. 14-02706-SHL-dkv

PHYLLIS GARDNER and
JANE or JOHN DOE,

       Defendants.

---

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL OF FIRST
AMENDED COMPLAINT
and
ORDER DENYING MOSES'S MOTION FOR APPOINTMENT OF COUNSEL
FOR TAJ' MOSES
and
ORDER DENYING MOSES'S MOTIONS FOR LEAVE TO AMEND HER FIRST
AMENDED COMPLAINT

---

On September 12, 2014, *pro se* plaintiff Pamela Moses ("Moses") and Taj' Moses, her minor son, filed a complaint against the defendants Judge Phyllis Gardner ("Judge Gardner") and Jane or John Doe, alleging common law claims of slander, libel, defamation, false light, malicious prosecution, wrongful use of civil proceedings, invasion of privacy, conspiracy, interference with contract and economic advantage and intentional infliction of emotional distress. (Compl., ECF No. 1.) On September 22, 2014, the court issued an order granting Moses leave to proceed *in forma pauperis*. (ECF No. 7.) On

September 23, 2014, the magistrate judge issued a Report and Recommendation recommending that this case be dismissed *sua sponte* for lack of subject matter jurisdiction. (Report and Recommendation, ECF No. 8.)

On October 7, 2014, Moses filed objections to the September 23, 2014 Report and Recommendation, (Objections, ECF No. 11), along with a motion for leave to amend her complaint, (Mot. to Leave for Am. Compl., ECF No. 10). By order dated March 11, 2015, the presiding district judge granted Moses's motion to amend her complaint and adopted the analysis in the Report and Recommendation but modified the recommendation, finding that Pamela Moses's amended complaint established federal question jurisdiction. (Order on Magistrate Judge's Report and Recommendation and Pls.' Mot. to Am., ECF No. 16.) In particular, the presiding district judge found that

> "[w]hile inartfully pleaded, Plaintiffs' claim under 42 U.S.C. § 1981 in her Amended Complaint properly states a federal question that makes jurisdiction appropriate before this court. Plaintiffs have asserted that Judge Gardner has engaged in actions that have caused the termination of Ms. Moses's contractual relationships with the Shelby County Election Commission and the Shelby County Law Library, and did so based on Ms. Moses's race. Without addressing the merit of such claims, the Court finds that, because 42 U.S.C. § 1981, unlike 42 U.S.C. § 1983, protects against "impairment by nongovernmental discrimination," such an assertion poses a federal question, appropriately establishing this Court's jurisdiction.

(*Id.* at 6.)   Although the presiding district judge granted
Pamela Moses's motion to amend her complaint, she did not set a
deadline for Pamela Moses to file her amended complaint.   By
order dated June 26, 2015, the magistrate judge ordered Moses to
file an amended complaint within fourteen days.   (Order, ECF No.
28.)[1]   Moses failed to do so, and on July 17, 2015, this court
again recommended that the *pro se* complaint be dismissed with
prejudice for lack of jurisdiction plus for failure to prosecute
under Federal Rule of Civil Procedure 41(b).   (Report and
Recommendation, ECF No. 29.)   Moses thereafter filed a motion
for additional time to submit her amended complaint asserting
that she did not timely receive the order directing her to do so
and after receipt she was unable to comply because of "various
health reasons."   (ECF No. 30.)   The magistrate judge denied the
motion, (ECF No. 31), and Moses, despite the denial, filed an

---

[1]On the same day, the court denied the following seven
pending motions filed by Moses:   (1) *Pro Se* Motion for
Assignment of Judge or Transfer of Case on Recusal, (ECF No.
13); (2) Moses's Motion for Joinder, (ECF No. 4); (3) Moses's
Motion for an Expedited and Emergency Show Cause Hearing, (ECF
No. 5); (4) *Pro Se* Plaintiff's Second Motion for an Expedited
and Show Cause Hearing, (ECF No. 6); (5) Moses's Third Motion
for an Expedited and Emergency Show Cause Hearing, (ECF No. 9);
*Pro Se* Motion to Amend Complaint and/or Hold Case in Abeyance
Pending for Amending of Complaint or Motion to Leave for Second
Amended Complaint, (ECF No. 18); (6) Second Motion for Leave to
File Amended Complaint and Memorandum of Law in Support, (ECF
No. 23); and (7) *Pro Se* Motion for Court To Order Service of
Process of the Defendants to the United States Marshals, (ECF
No. 24). (Orders, ECF Nos. 26, 27, and 28.)   Moses did not
appeal or object to any of these orders.

amended complaint on July 22, 2015, (ECF No. 32).  Moses also
filed objections to the July 17, 2015 Report and Recommendation.
(ECF No. 33.)  The presiding district judge found that Moses did
not offer a valid justification for her failure to comply with
the court's order, adopted the July 17, 2015 Report and
Recommendation, dismissed all the claims, and entered a judgment
dismissing the case.  (ECF Nos. 36, 37.)  Moses filed an appeal.
On appeal, the Sixth Circuit vacated the judgment, instructed
the district court to treat Moses's "motion to leave for amended
complaint" as her first amended complaint, and remanded the case
for further proceedings consistent with its order.  (Order of
USCA, ECF No. 46.)  The Sixth Circuit noted in its order that
the district court should have dismissed Taj' Moses's claims
without prejudice, because "'parents cannot appear pro se on
behalf of their minor children because a minor's personal cause
of action is [his] own and does not belong to [his] parent or
representative.'"  (*Id.* at 2.)  Following the remand, Moses
filed a motion for appointment of counsel for her minor child
Taj' Moses.  (ECF No. 47.)

This case has again been referred to the United States
Magistrate Judge for management and for all pretrial matters for
determination and/or report and recommendation as appropriate
along with Moses's motion for appointment of counsel for Taj'
Moses.  (Order of Reference, ECF No. 50.)  Consistent with the

4

Sixth Circuit order, the court treats Moses's Motion to Leave for Amended Complaint, (ECF No. 10), as her first amended complaint, which she can file as a matter of course without obtaining leave from the district court, *see* Fed. R. Civ. P. 15(a)(1) [hereinafter First Amended Complaint].

On March 30, 2015, Moses filed a "Pro se Motion to Amend Complaint and/or Hold Case in Abeyance Pending for Amending of Complaint or Motion to Leave for Second Amended Complaint." (ECF No. 18.)  On June 1, 2015, Moses filed another "Pro Se Motion for Leave to File Amended Complaint and Memorandum of Law in Support." (ECF No. 23.)  Thereafter, on July 22, 2015, Moses filed a "Pro Se Amended Complaint." (ECF No. 32.)  Therefore, the court will treat Moses's March 30 and June 1, 2015 motions as motions for leave to file a second amended complaint and Moses's July 22, 2015 filing, (ECF No. 32), as her proposed second amended complaint.[2]

For the reasons that follow, it is recommended that Moses's First Amended Complaint be dismissed *sua sponte* for failure to state a claim.  Further, Moses's motions for leave to file a second amended complaint, (ECF Nos. 18 & 23), are denied and Moses's motion for appointment of counsel for her minor child Taj' Moses, (ECF No. 47), is denied.

---

[2]The court does so for purposes of analysis of the proposed second amended complaint even though both motions to amend were previously denied.  *See supra* n.1.

I.   PROPOSED FINDINGS OF FACT

In an attempt to cure the federal jurisdictional deficiencies in her original complaint, Moses's First Amended Complaint adds a general allegation of "violations of various constitutional provisions, specifically . . . the First Amendment, the Fourth Amendment through Tenth Amendments, and the Fourteenth Amendment to the Constitution." (First Am. Compl. 1, ECF No. 10.) She retains the following six state common law claims which were set forth in her original complaint: (1) slander/defamation (Count I);[3] (2) malicious prosecution (Count II);[4] (3) invasion of privacy (Count III); conspiracy (Count IV); (5) interference with contract or economic advantage (Count V); and intentional or negligent

---

[3] In her First Amended Complaint, Moses attempts to convert her defamation claim to a federal claim by citing to two federal statutes – 28 U.S.C. § 4101 and 28 U.S.C. § 1605. Both are inapplicable. The first statute referenced, 28 U.S.C. § 4101, is part of the definition section of Chapter 181 on Foreign Judgments. The second section referenced, 28 U.S.C. § 1605, contains the general exceptions to the jurisdictional of immunity of a foreign state.

[4] Likewise, Moses attempts to convert her malicious prosecution claim in her First Amended Complaint to a federal claim by citing to 28 U.S.C. § 1605 and 28 U.S.C. § 1331. Again both statutes are inapplicable. As stated previously, 28 U.S.C. § 1605, contains the general exceptions to the jurisdictional of immunity of a foreign state. The second statute Moses references, 28 U.S.C. § 1331, merely provides for federal question jurisdiction. Nevertheless, out of an abundance of caution, the court will construe Moses's malicious prosecution claim as brought under the Fourth Amendment, *see supra* Section II.E.3.

infliction of emotional distress (Count VI). (*Id.* at 9-14.) In addition, she adds two new counts: a claim for "Civil Rights Discrimination Based on Race" (Count VII) and a claim under the "Racketeer Influenced and Corrupt Organizations Act" ("RICO")(Count VIII). (*Id.* at 14.)

In her First Amended Complaint, Moses alleges that the court has jurisdiction under "42 U.S.C. § 1391 and the other codes incorporated in this amended complaint." (*Id.* at 2.) Moses asserts venue is proper pursuant to 42 U.S.C. § 1981, 28 U.S.C. § 4101 & 1605, 18 U.S.C. § Chapter 96; 18 U.S.C. § 1001, 28 U.S.C. § 1331, 28 U.S.C. § 1291; 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 28 U.S.C. § 1983. (*Id.* at 4.)

This action arises from the issuance of a Temporary Order of Protection ("TRO") in the General Sessions Criminal Court and Order for Hearing by judicial commissioner Michael Cross on September 8, 2014. (*Id.* at 7; ECF No. 1-1.)[5] The petition for the TRO was filed by "The Honorable Phyllis Gardner in her Official Capacity" as Judge in General Sessions Court of Shelby County. (ECF No. 1-1.) As grounds for issuance of the TRO, Judge Gardner's sworn petition indicates that Moses had stalked

---

[5]Moses attached Judge Gardner's petition for TRO to her original complaint but failed to attach it to her First Amended Complaint. (*See* ECF Nos. 1, 10.) Given Moses's *pro se* status, the court will consider Moses's attachments to her original complaint when screening her First Amended Complaint.

her and sets forth seven instances of conduct by Moses which

caused Judge Gardner to fear for her safety:

> 1.   After Respondent was held in contempt of court for
> impersonating someone else [on February 19, 2014], she
> became combative and refused to leave Petitioner's
> courtroom.   While in police custody thereafter,
> Respondent escaped . . . .

> 2.   Respondent started a Facebook page titled "Don't
> Re-Elect Judge Phyllis Gardner" on which she has a
> picture of Petitioner against a backdrop of
> individuals wearing Ku Klux Klan robes. . . .
> Respondent's conduct caused members of the legal
> community to contact Petitioner because they feared
> for her safety, citing Moses's prior felony conviction
> for aggravated assault, her mental health history,
> substance abuse, violent anger issues, and ready
> access to firearms . . . .

> 3.   While Petitioner was campaigning during early
> voting, respondent approached Petitioner and her group
> of supports, got very close to Petitioner, and began
> yelling loudly, causing quite a disturbance . . . .

> 4.   Following the creation of the above-referenced
> Facebook page, Respondent has repeatedly posted false
> statements regarding petitioner.   For example,
> Respondent used the Facebook page to state, "If you
> Vote to Re-elect Judge Phyllis Gardner you are voting
> for Slavery and official oppression. Please don't vote
> for her." . . .

> 5.   Respondent has been handing out flyers containing
> inflammatory statements on the steps of the Shelby
> County Courthouse . . . with the heading "Remove
> Phyllis Gardner from Office." . . . .

> 6.   Respondent attempted to enter the swearing-in
> ceremony for recently elected judges, and she as
> barred from doing so due to her engaging in loud and
> disruptive behavior . . . .

> 7.   Respondent has filed multiple, groundless civil
> complaints against Petitioner . . . .

(*Id.*)    Moses    was    served    with    the    TRO    on    September    9,    2014,
(First Am. Compl. 7 ¶ 29, ECF No. 10.), and three days later
Moses filed the original complaint in this case.

In her First Amended Complaint, Moses takes issue with the
grounds for the TRO and claims the statements in the petition
for the TRO consist of "slander and blatant lies." (*Id.* at 7 ¶
30.) In addition to the allegedly defamatory and libelous sworn
statements    in    the    petition    for    order    of    protection,    Moses
alleges that Judge Gardner has instructed the Shelby County
Sheriff's homeland security officers to follow her when she is
downtown; that she has made untrue statements to two officers
that Moses "squats in houses and is a sovereign citizen;" that
she has instructed the officers to lie; that she has instructed
the officers to illegally detain her; that she has instructed
officers to prevent her from entering public buildings; and that
she has "used her judicial power as a judge to label and
directly have SCSO homeland security harass Plaintiff daily."
(*Id.* at 4-5 ¶¶ 7-10, 12, 17.)    According to Moses, Judge
Gardner engaged in retaliatory conduct against her because Moses
"appeal[ed] her cases and fil[ed] complaints with the Board of
Judiciary." (*Id.* at 7 ¶ 28.)

By way of background, according to the Shelby County Criminal Court website,[6] Moses was indicted on December 18, 2014 for tampering with/fabricating evidence, forgery of $1000 or less, retaliation against juror, perjury, and stalking.[7] According to the same website, a capias warrant was issued on December 18, 2014, Warrant No. 14048690, and Moses was taken to jail on the same date, Booking No. 14647986.[8] Moses entered a guilty plea on the above-listed charges and was sentenced on April 29, 2015.[9] State court records indicate that on July 15,

---

[6]In assessing whether Moses's First Amended Complaint states a claim upon which relief may be granted, the court may consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)(quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)(quoting *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[7]Moses's December 18, 2014 Indictment No. is 1406502. Moses also has a February 12, 2015 indictment for evading arrest, Indictment No. 1500740, and a February 19, 2015 indictment for evading arrest and escape from incarceration, Indictment No. 1500884.

[8]Moses was arraigned on January 7, 2015 and had a bond hearing on January 22, 2015.

[9]Moses received three years of probation on her tampering with evidence charge, two years of probation on her forgery charge, eleven months and twenty-nine days of probation on her perjury charge, and eleven months and twenty-nine days of probation on her stalking charge.

2015, Moses filed an appeal and her "case status" or "case disposition code" is "A" which means "case under appeal."[10]

In her Claims for Relief, Moses seeks the following relief:

> 1.   For a declaration that Defendants has [sic] committed perjury, and willfully slandered, defamed, intentionally inflicted emotional distress against Plaintiffs and her children directly and indirectly.
>
> 2.   Plaintiff reserves the right to amend this complaint if needed because she is not an attorney and is representing herself
>
> 3.   Plaintiff request [sic] this honorable court sees fit due to Plaintiff's indigence [sic] status to appoint counsel to represent her.
>
> 4.   A requesting an exparte [sic] hearing within 72 hours.
>
> 5.   Plaintiff seeks 7 million dollars in damages.
>
> 6.   For a permanent injunction requiring that Defendant to cease and desist from mentioning Plaintiff's name in any shape form or facet [sic] including filing documents against her in any Shelby County Court that does not have a Special Appointed Judge from the Tennessee Court of Administration to preside over any matters. For all of Defendant's agents, servants, employees, officer, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them cease directly or indirectly from making contact with Plaintiff infringing constitutional rights, or causing, enabling, facilitating, encouraging, promoting and inducing, or

---

[10] It appears from state court records that Moses is only appealing her tampering with/fabricating evidence charge.

11

participating in the acts against Plaintiff
and her children that could cause harm or
personal injuries whether now in existence
or hereafter created.

7. For an award to Plaintiff of compensatory
damages sufficient to her mental anguish and
emotional distress from defamation,
embarrassment, and humiliation as will be
proven at trial.

8. For an award for the damage to Plaintiff
Moses professional reputation as result of
Defendant's actions.

9. For an award to Plaintiff of Punitive
damages against Defendant as a result of the
reckless indifference with which she
violated Plaintiff Moses and minor child.

10. Defendant's [sic] to pay Plaintiffs'
cost including reasonable fees pursuant to
Civil Rights Act 1976 42 U.S.C. § 1988(b)

11. For an award to Plaintiff of other and
additional legal or equitable relief both
pre-and post-judgment interest accordance to
law and which Plaintiffs are entitled.

For such other and further relief as this
honorable Court may deem just, fair, and
proper.

(First Am. Compl. 16-17, ECF No. 10.)

Moses also seeks an injunction requiring Judge Gardner to

refrain from (a) making or swearing false unsubstantiated

statements; (b) filing any documents or cases against Moses that

are not filed in the United States District Court; (c)

instructing the Shelby County Sheriff to harass, detain, or

arrest Moses; (d) contacting or making any contact with Moses or Moses's family or friends. (*Id.* at 15.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  <u>28 U.S.C. § 1915(e)(2) Screening</u>

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2).  The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

 (i)  is frivolous or malicious;

 (ii)  fails to state a claim on which relief may be granted; or

 (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).  Because Moses has been granted leave to proceed *in forma pauperis*, this report and recommendation will constitute the court's screening of Moses's First Amended Complaint.

### B.  <u>Subject-Matter Jurisdiction and Venue</u>

The presiding district judge has already determined that Moses's reference to 42 U.S.C. § 1981 in the venue section of

the First Amended Complaint when combined with Moses's cause of action for interference with contract in both the original and amended complaints (Count V of the First Amended Complaint) and her new claim of civil rights discrimination based on race (Count VII of the First Amended Complaint) constitutes a claim under 42 U.S.C. § 1981 and properly states a federal question that makes jurisdiction appropriate before this court. In addition, in the amended complaint, Moses has added a RICO claim. Thus, this court has federal question subject matter jurisdiction. Venue is also appropriate in this district.

C.    Standard of Review for Failure to State a Claim

In assessing whether Moses's First Amended Complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of

14

truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se*

litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

D.   Moses's Federal Claims Against Judge Gardner are Barred by the Doctrine of Absolute Immunity

Moses does not specify whether Judge Gardner is sued in her individual and official capacity, and it is not clear from the allegations in the First Amended Complaint.  To the extent Moses attempts to bring official-capacity claims against Judge Gardner for violation of her civil rights, Judge Gardner is a Shelby County, Tennessee, official,[11] and a claim against a county

---

[11]In *Durham v. Dismukes*, 206 Tenn. 448 (1960), the Tennessee Supreme Court held that a judge of the General Sessions Court for Sumner County, Tennessee, was a county officer, rather than a state officer because there was no legislative intent for to create a court with jurisdiction beyond the borders of the county, the county bore the expense of the court, paid the judge's salary, and was entitled to the fees collected.  *Id.* at 451-56; *see also Stambaugh v. Price*, 532 S.W.2d 929, 933 (Tenn. 1976)(holding that a juvenile court judge is a county officer and not a state officer because the county pays his salary and any expenses of the court).  The Tennessee Code provides that "[t]he jurisdiction, power and authority of the [general sessions courts] shall be coextensive with the county."  Tenn.

official in her official capacity is tantamount to a suit against the county entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(citation omitted). "Because a suit under section 1983 against a defendant 'in [her] official capacity' is equivalent to a suit against the local government entity, provided that the entity receives notice and an opportunity to respond, the prudent course for a plaintiff who seeks to hold a local government entity liable for damages resulting from an allegedly unconstitutional action under 42 U.S.C. § 1983 would be to name in his pleadings the government entity itself." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). A governmental entity is liable under section 1983 when "the entity's 'policy or custom' [] played a part in the violation of federal law." *Graham*, 473 U.S. at 199 (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)).

Here, Moses does not name Shelby County, Tennessee, as a defendant in the suit and does not set forth any claims against

---

Code Ann. § 16-15-501(a). As to expenses and salaries, the statute provides that "[e]ach county shall provide a courtroom for the general sessions court in the county seat and all necessary supplies and equipment for the maintenance of the court and shall defray the expenses thereof from the general fund of the county," *Id.* § 16-15-102 (a), and that "[e]ach county shall be responsible for paying the base salary . . . for all of the general sessions judges in the county," *Id.* § 16-15-5006(a). Therefore, because Judge Gardner is a judge for the General Sessions Court for Shelby County, Tennessee, she is a county official.

Shelby County.  Moses does not allege that any policy or custom of Shelby County played a part in her alleged violations of federal law.  Rather, Moses seeks to impose personal liability upon Judge Gardner because Moses specifically requests compensatory damages from Judge Gardner.  (*See* First Am. Compl. 16, ECF No. 10.)  Moses also requests punitive damages from Judge Gardner, (*see id.*), which is a strong indicator that the claims are asserted against Judge Gardner in her personal capacity because municipalities are immune from punitive damages under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Moreover, the presiding district judge has previously construed Moses's claims against Judge Gardner in her First Amended Complaint as individual capacity claims, not as official capacity claims.  (*See* Order on Magistrate Judge's Report and Recommendation 5, ECF No. 16.)

"[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Supreme Court has long recognized that officials sued for monetary relief under § 1983 in their personal capacities may be entitled to assert the defense of absolute or qualified immunity.  *Rehberg v. Paulk*,

132 S. Ct. 1497, 1502 (2012).[12]   In particular, judges are absolutely immune from civil suits for money damages.  *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)(citations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997)("For centuries, the cloak of absolute judicial immunity has shielded judges from claims pertaining to actions they have taken in discharging their official duties.").  "[T]he issue of immunity should be resolved at the earliest possible stage of a litigation, in order to prevent the litigant from having to endure pretrial matters such as discovery."  *Barrett*, 130 F.3d at 252 (citations omitted).

In her instant complaint, Moses takes issue with the grounds for Judge Gardner's TRO and claims the statements in the petition for the TRO consist of "slander and blatant lies." (First Am. Compl. 7 ¶ 30, ECF No. 10.)  As discussed below, Judge Gardner, however, is immune from § 1983 suits for her statements in the petition for the TRO and her participation in the subsequent criminal investigation of Moses.   The doctrine of judicial immunity "has protected a sweeping range of judicial actions."  *Barnes*, 105 F.3d at 1115 (citing cases holding that

---

[12]"[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541 (1984). In her claims for relief, Moses requests a permanent injunction against Judge Gardner.  (First Am. Compl. 15-16, ECF No. 10.) As discussed below, however, Moses is not entitled to such relief.

the judge was immune for a number of actions). Judicial immunity extends to acts performed by the judge in error, maliciously, corruptly, in bad faith, or with malice. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)(citations omitted). Absolute judicial immunity is overcome only in two situations: (1) a judge is not immune for actions not taken in the judge's judicial capacity; and (2) a judge is not immune for actions taken in the complete absence of all jurisdiction. *Barnes*, 105 F.3d at 1115-16. Moses does not allege that Judge Gardner acted in complete absence of jurisdiction. The court will therefore construe Moses's claims as falling under the first situation.

The Supreme Court has established a two-prong test to determine whether an act is judicial. First, the court must consider whether the act in question is a function that is "normally performed by a judge." *Stump*, 435 U.S. at 362. Second, the court must assess whether the party "dealt with the judge in his judicial capacity." *Id.; see also Mireles v. Waco*, 502 U.S. 9, 12 (1991)(quoting *Stump*).

1. *"Normally Performed by a Judge"*

"Whether an act is judicial depends on the nature and function of the act, not the act itself." *Barnes*, 105 F.3d at 1116 (quotation and internal quotation marks omitted). This inquiry is referred to as the functional approach. *Brookings*,

20

389 F.3d at 617. "[E]ven if a particular act is not a function normally performed by a judge, we are directed to 'look to the particular act's relation to a general function normally performed by a judge.'" *Barnes*, 105 F.3d at 116 (quoting *Mireles*, 502 U.S. at 13).

In *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), the Sixth Circuit addressed the issue of whether the initiation of criminal proceedings by a judge against a disgruntled litigant constitutes a judicial act. The plaintiff Barrett was the owner of a roofing business who "was involved in an ongoing controversy with the Department of Codes Administration of the Metropolitan Government of Nashville and Davidson County regarding work permits for various projects." *Id.* at 249. Barrett appeared before Judge Harington, a General Sessions Judge of Nashville and Davidson County, regarding two violations of the Environmental Codes. *Id.* After Judge Harrington ruled against Barrett, Barrett decided to investigate Judge Harrington "in order to advocate opposition to her re-election." *Id.* During his investigation, Barrett made threatening remarks about Judge Harrington to court employees and a television news reporter who advised Judge Harrington that she should be concerned for her safety. *Id.* Judge Harrington became fearful of Barrett and in response wrote letters on her judicial letterhead to the state district attorney urging him to

investigate Barrett "because he was 'attempting to obstruct justice by harassing [her] and [her] family,' including requiring her to recuse herself from future cases against him, which were likely to arise due to his ongoing dispute with the Codes Department." *Id.*

The Sixth Circuit concluded that absolute immunity shielded Judge Harrington from liability for her actions in writing letters to the prosecutors that prompted the criminal investigation of Barrett. *Id.* at 259. The Sixth Circuit stated that although the letters did not concern the decision who shall win a case, they did involve the "case deciding process" because Judge Harrington "wrote to express her fear that the harassment would cause her to have to recuse herself from future cases involving Mr. Barrett." *Id.* at 258. The court also found that Judge Harrington wrote the letters because she believed that Barrett's actions "amounted to obstruction" of justice and she was attempting "to protect the integrity of the judicial decision-making process." *Id.* at 258-59. The court stated:

> Clearly, there was a direct relational nexus between
> Harrington's judicial decisions, Barrett's response in
> "investigating" and threatening her, and Harrington's
> response in contacting the prosecuting attorneys.
> Based upon what Ms. Nixon and Mr. Brinton told her
> that Barrett had said about her, and their expression
> of concern for her safety arising out of his conduct,
> Judge Harrington understandably felt threatened by
> Barrett's statements, and the letters she wrote to the
> prosecutors were clearly designed to address and deter
> such conduct, and directly related to her role in

adjudicating the case which engendered Barrett's conduct in the first place. Just as a judge's citation for contempt against a party who obstructs justice is a judicial act taken to preserve integrity of the judicial system, so too is the instigation of criminal proceedings against a disgruntled litigant whose conduct may amount to obstruction. It would make little sense, and only promote form over substance, for us to say that a judge's response in redressing threatening conduct which she physically observes (e.g., contempt) is entitled to the cloak of judicial immunity, but her action in redressing a threat arising in reaction to her adjudicatory actions which she is told of by others is not entitled to the same level of immunity. The import is in the nexus between the Judge's action which gave rise to the threat and her response to the threat, not simply the response itself.

*Id.* at 259. Significantly, the court noted that it made "no difference that Barrett's alleged obstruction occurred outside the courtroom," rather, "[i]f Judge Harrington believed Mr. Barrett's actions amounted to obstruction she had a duty to report to the proper authorities." *Id.* at 258. Ultimately, the Sixth Circuit held "that in circumstances in which a judge reasonably perceives a threat to himself or herself arising out of the judge's adjudicatory conduct, the judge's response, be it a letter to a prosecutor or a call to the Marshall's office for security, is a judicial act within the scope of judicial immunity." *Id.* at 259.

In another case, *Brookings v. Clunk*, 389 F.3d 614 (6th Cir. 2004), Judge Clunk, a Probate Judge in Stark County, Ohio, filed a criminal complaint against Brooking for "knowingly making

23

false statements while applying for a marriage license" in violation of Ohio law. *Id.* at 616. The Sixth Circuit stated that "[u]pon learning that Brookings had falsified information on his application for a marriage license, Judge Clunk had an obligation to report to prosecuting authorities that he felt a crime had been committed in his court." *Id.* at 620-21. The Sixth Circuit further stated:

> Admittedly, the swearing out of a criminal complaint is not a normal function of a judge. In fact, this type of conduct is typically undertaken by a citizen complainant or law enforcement personnel. And as previously noted, the instigation of criminal proceedings is not an adjudicatory function in that it does not resolve disputes between two parties, but rather it initiates one. However, the general function of Judge Clunk's conduct in initiating criminal proceedings against Brookings was to "preserve the integrity of the judicial system."

*Id.* at 621 (quoting *Barrett*).

The facts of this case are very similar to those in *Barrett* and *Brookings*. As in *Barrett*, Judge Gardner perceived a threat to herself arising out of her adjudicatory conduct of holding Moses in contempt while Moses was in Judge Gardner's courtroom. Moses's conduct of, *inter alia*, consistently stalking Judge Gardner and creating a Facebook page with a picture of Judge Gardner against a backdrop of individuals wearing Ku Klux Klan robes made Judge Gardner concerned for her safety. (*See* ECF No.

1-1.)[13]    Further, as in *Barrett*, multiple people contacted Judge Gardner to tell her that she should be concerned for her safety. In response, Judge Gardner sought and was granted a TRO against Moses.   The TRO, similar to the criminal complaint in *Brookings*, does not constitute an adjudicatory function in that it does not resolve disputes between two parties.   However, the general function of Judge Gardner's conduct in petitioning for a TRO was to preserve the integrity of the judicial system.   In the petition for the TRO, Judge Gardner states that she believed Moses's behavior amounted to an "abuse of the legal system." (TRO 4, ECF No. 1-1.)   As the judges in *Brookings* and *Barrett*, Judge Gardner has an obligation to report Moses's conduct in the courtroom and outside the courtroom.   Because Judge Gardner "reasonably perceive[d] a threat to [] herself arising out of [her] adjudicatory conduct," her response in securing a TRO is a judicial act within the scope of judicial immunity.   *See Barrett*, 130 F.3d at 260.   As the Sixth Circuit stated in *Brookings*, if a litigant, such as Moses, is able to threaten judges with personal liability for reporting the litigant's behavior, "the integrity of the judicial system is jeopardized" and the litigant would be encouraged "to act unlawfully and

---

[13]As stated above, Moses plead guilty to the stalking charges in state court.

limit a judge's ability to address such conduct through proper venues." *See Brookings*, 389 F.3d at 621.

    2.    *Judicial Capacity*

In *Barrett*, the Sixth Circuit found that Barrett's threats against Judge Harrington were related to her judicial capacity because they were in response to Judge Harrington's judicial decisions and conduct in proceedings against Barrett for environmental code violations. *Barrett*, 130 F.3d at 260. The Sixth Circuit noted that "Barrett's entire course of conduct was focused on Harrington's judicial role," first, because she presided over Barrett's court case, and second, because "all of his activities, from his 'investigation' campaign, to his comments to others about her, to the disclosure to the media of her ticket dismissals, were in response to her judicial decisions and conduct." *Id.*

Here, Moses first dealt with Judge Gardner in her judicial capacity when Judge Gardner presided over a case where Moses attempted to represent another litigant and was held in contempt. It was at that time that Moses "formulated [her] opinion" that Judge Gardner was not fit to hold office and began her campaign against Judge Gardner's reelection. *See Barrett*, 130 F.3d at 260. Moses's subsequent activities, from her comments on Facebook to her comments to others about Judge Gardner, to her "campaign" against the re-election of Judge

Gardner, were in response to Judge Gardner's decision to hold
Moses in contempt. Given this chain of related events, Moses
clearly dealt with Judge Gardner in her judicial capacity.

To sum, citing the Supreme Court, the *Barrett* court
explained:

> [T]he doctrine of judicial immunity exists to ensure
> that, in discharging their official responsibilities,
> judges will act without fear for their personal
> liability. If a disgruntled litigant is permitted to
> upset that equilibrium by threatening or harassing a
> judge and the judge must fear personal liability if he
> or she reports that harassment to authorities, the
> judge[]'s ability to deal impartially and without fear
> will be seriously undermined. Even more to the point,
> the litigant, empowered to subject the judge to
> liability for reporting the conduct, can affect the
> judge's ability to sit on cases involving that
> litigant, thereby effectively creating a situation
> wherein the litigant will not have to answer to that
> judge or even appear before the judge. This enables
> the litigant to "forum shop" by effecting the recusal
> of a judge through the litigant's own threatening or
> harassing conduct.
>
> If the judge were not free to address this
> conduct by complaining to law enforcement without fear
> of liability, the judge's freedom of action in
> insuring the integrity of his or her decision-making
> process, and, indeed, his or her decisions themselves,
> will be jeopardized. Any result which did not extend
> immunity to judges acting to protect the integrity of
> the judicial decision-making process would seriously
> undermine judicial independence, a cornerstone of a
> judge's capacity to sit and decide cases.

*Id.* (citation omitted). Here, because Moses dealt with Judge
Gardner in her judicial capacity, and because a judge
instigating a criminal investigation, in this case petitioning
the court for a TRO, against a disgruntled litigant who has

harassed her is a judicial act, Judge Gardner is entitled to
absolute judicial immunity regarding her statements in the
petition for the TRO.

As to Moses's allegations that Judge Gardner instructed
"Shelby County Sherriff's homeland security officers" to follow,
harass, and detain her, as discussed below, these allegations
fail to state a claim upon which relief may be granted. To the
extent Judge Gardner requested security from the Sheriff's
office or directed officers to carry out her orders, such as
arresting Moses after she was held in contempt, such acts are
judicial acts and fall within the scope of judicial immunity.
*See Barrett*, 130 F.3d at 259 ("[I]n circumstances in which a
judge reasonably perceives a threat to himself or herself
arising out of the judge's adjudicatory conduct, the judge's
response, be it a letter to a prosecutor or a call to the
Marshall's office for security, is a judicial act within the
scope of judicial immunity."); *see also Mireles*, 502 U.S. at 12
(holding that a judge was judicially immune from suit under 42
U.S.C. § 1983 for allegedly ordering police officers to bring
attorney before judge, even though judge allegedly directed
officers to carryout order with excessive force).

Accordingly, it is recommended that all Moses's claims
against Judge Gardner be dismissed as barred by absolute
judicial immunity.

28

E.    Moses's Federal Claims Against Judge Gardner Are Meritless

Even if Judge Gardner is not entitled to judicial immunity, Moses federal claims asserted in her First Amended Complaint are meritless.    To bring an action under section 1983, Moses must allege that she was deprived of a right secured by the Constitution or laws of the United States and that such deprivation was caused by a person acting under color of state law.    42 U.S.C. § 1983; *Fritz v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010).    Moses does not specify which particular acts of Judge Gardner violated her constitutional rights or which constitutional rights specifically were violated, although she does generally refer elsewhere in the First Amended Complaint to the First, Fourth, Fifth and Fourteenth Amendment.[14]  (First Am. Compl. 9, ECF No. 10.)    Moses also alleges that Judge Gardner violated federal laws, specifically, that Judge Gardner committed conspiracy to violate her constitutional rights under 42 U.S.C. 1985, (*Id.* at 12), interfered with Moses's contractual rights under 42 U.S.C. § 1981, (*Id.* at 13), and committed RICO violations, (*Id.* at 14).

---

[14]In the introductory paragraph of her First Amended Complaint, Moses states that she is addressing violations of various constitutional provisions, specifically the First Amendment, the Fourth through Tenth Amendments, and the Fourteenth Amendment but she fails to make any further reference to the Sixth, Seventh, Eighth, and Ninth Amendment in the body of the First Amended Complaint.    Therefore, it is unnecessary to address these amendments.

1.    *Fifth & Fourteenth Amendments*

The Fifth Amendment to the United States Constitution declares that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment limits the power of the federal government and the Fourteenth Amendment secures the application of the Fifth Amendment to the state governments. *Malloy v. Hogan,* 378 U.S. 1, 8, 26 (1964)("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth."). Here, Judge Gardner did not act on behalf of the federal government and thus she cannot incur liability under the Fifth Amendment. *Hockenberry v. Vill. of Carrollton*, 110 F. Supp. 2d 597, 603 (N.D. Ohio 2000).

"The Fourteenth Amendment creates numerous rights enforceable under § 1983, namely substantive and procedural due process, the equal protection of the laws, and those rights in the Bill of Rights incorporated by the Due Process Clause of the Fourteenth Amendment," such as rights protected by the First, Second, Fourth, and Eighth Amendments. Martin A. Schwartz, Fed. Judicial Ctr., Section 1983 Litigation 29 (3rd ed. 2014); *see also Kiser v. Kamdar*, No. 15-3335, 2016 WL 4150918, at *5 (6th Cir. Aug. 5, 2016)(stating that because the Bill of Rights

amendments have been incorporated by the Due Process Clause of
the Fourteenth Amendment, state officials are subject to § 1983
lawsuits under these amendments).   The Due Process Clause of the
Fourteenth Amendment forbids a state from "depriv[ing] any
person of life, liberty, or property without due process of
law."  U.S. Const. amend. XIV, § 1.   It contains "a substantive
component that bars certain arbitrary, wrongful government
actions 'regardless of the fairness of the procedures used to
implement them.'"   *Zinermon v. Burch*, 494 U.S. 113, 125
(1990)(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).
The Fourteenth Amendment's substantive due process protections
have "been accorded to matters relating to marriage, family,
procreation, and the right to bodily integrity."  *See Albright
v. Oliver*, 510 U.S. 266, 272 (1994)(citations omitted).

        Apart from listing the Fourteenth Amendment as source of
her claims, Moses does not allege any substantive or procedural
due process claims.   Moses only alleges violations of the First
and Fourth Amendments.   "Where a particular Amendment 'provides
an explicit textual source of constitutional protection' against
a particular sort of government behavior, 'that Amendment, not
the more generalized notion of substantive due process, must be
the guide for analyzing [the] claim.'"   *Id.* at 273 (quoting
*Graham v. Connor*, 490 U.S. 386, 395 (1989)).   Therefore, the

31

court will analyze Moses's claims under the First and Fourth Amendments in the next section.

Lastly, in Count VII, Moses cursorily alleges that Judge Gardner discriminated against her based on her race, "African-Jamerican and Black." (First Am. Compl. 14, ECF No. 10.)  Moses states that "[h]ad [she] been Caucasian or White these [discriminating] acts would not have occurred." (*Id.*)  The court construes this count as bringing a claim under the Fourteenth Amendment's Equal Protection Clause.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.'" *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996)(quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)).  "The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

Moses's sparse allegations that Judge Gardner discriminated against her because of her race are entirely speculative and implausible.  As discussed herein, Moses has not sufficiently

alleged a constitutional violation, let alone that such violation occurred because of her race. There are no specific factual allegations from which the court can infer that Judge Gardner discriminated in any way towards Moses because of her protected status. There is no nexus between any actions Judge Gardner took and Moses's race. "[C]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)(citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)). Therefore, the court recommends that Moses's claim under the Fourteenth Amendment's Equal Protection Clause be dismissed.

2. *First Amendment*

Although far from comprehensible, it appears that Moses alleges that Judge Gardner took adverse actions against her in retaliation for Moses's First Amendment speech. Specifically, Moses alleges that Judge Gardner instructed SCSO homeland security officers to harass Moses in retaliation for Moses's complaints against Judge Gardner and Moses's political speech of Facebook. (First Am. Comp. 4-5, ECF No. 10.) Moses further states that Judge Gardner retaliated against Moses after she filed complaints and served a witness with the Board of Judiciary. (*Id.* at 6-7.)

33

The First Amendment confers individuals the "freedom to express disagreement with state action, without fear of reprisal based on the expression." *Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006)(internal quotation omitted)(citing *McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 520 (6th Cir. 2001)).  "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006)(citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)).  "[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution." *Id.* (citing *Crawford-El*, 523 U.S. at 593); *see also Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)("[W]here constitutionally protected speech is a 'motivating factor' in a governmental action adverse to the plaintiff, the adverse action is unconstitutional . . . *unless the same action would have been taken 'even in the absence of the protected conduct.'*" (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977))); *McKinney v. Fields*, No. 07-CV-10652, 2009 WL 816886, at *5 (E.D. Mich. Mar. 27, 2009)(holding the same).  Thus, in order to succeed on a claim of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected conduct; (2) an adverse

action was taken against her that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated by the protected conduct. *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014)(citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Moses's allegations pertaining to her First Amendment retaliation claim are not plausible. First, it is not clear when Moses filed judicial misconduct claims against Judge Gardner or when she spoke out on social media against Judge Gardner. Assuming that Moses's criticism of Judge Gardner is protected by the First Amendment, Moses has not sufficiently alleged that Moses's criticism of Judge Gardner was a "substantial" or "motivating" factor in Judge Gardner's conduct. There is nothing in the record to suggest that Judge Gardner had a retaliatory motive in petitioning for a TRO against Moses. Moses's allegations that Judge Gardner retaliated by instructing various SCSO and homeland security officers to harass Moses is equally implausible. Moses has not pled any facts plausibly suggesting Judge Gardner had authority to instruct SCSO agents or homeland security officers to behave a certain way. Moreover, as Judge McCraw has noted, any adverse consequences that Moses has experienced are the result of nonretaliatory grounds, such as, "security threats by Pamela Moses, whether

35

they be true or untrue, that other members of the judiciary have perceived." Order Denying Injunction Relief 1-2, Moses v. Shelby County Sheriff Bill Oldham & Officer, Shelby County Homeland Security, and Allied Barton Security Services LLC, Docket No. CH-14-1316-3 (Tenn. Ch. Ct. Oct. 5, 2015). Therefore, the court recommends that Moses's § 1983 claim against Judge Gardner arising under the First Amendment be dismissed for failure to state a claim upon which relief may be granted.

    3.  *Fourth Amendment*

    Moses's Fourth Amendment claim consisting of a claim of malicious prosecution is also incomprehensible. Moses's sole allegation is that her "illegal detention[] and false imprisonment and physical abuse were under direct instructions" of Judge Gardner. (First Am. Compl. 5, ECF No. 10.) The Supreme Court explained in *Albright v. Oliver,* that the Fourth Amendment, which governs "deprivations of liberty that go hand in hand with criminal prosecutions . . . must be the guide for analyzing [malicious prosecution] claims." 510 U.S. at 273-74; *see also Spurlock v. Satterfield,* 167 F.3d 995, 1005-07 (6th Cir. 1999)(recognizing that malicious prosecution of an individual without probable cause violates rights afforded by the Fourth Amendment). A malicious-prosecution claim "encompasses wrongful investigation, prosecution, conviction,

36

and incarceration." *Wright*, 449 F.3d at 715-16 (citing *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003)). As previously stated herein, Moses pled guilty to stalking judge Gardner. Thus, it cannot be said that Judge Gardner sought a TRO or instituted criminal action without probable cause.

Apart from being factually deficient, Moses's instant malicious prosecution claim is also barred by the doctrine of res judicata. Moses has previously filed another lawsuit against Judge Gardner alleging deprivations of her civil rights under 42 U.S.C. § 1983, docketed as Pamela J. Moses v. Phyllis Gardner, Case No. 2:14-cv-2763-JDT-dkv. In that lawsuit, Moses alleged that after Judge Gardner held Moses in contempt of court, she was illegally detained, imprisoned, denied bail and bond, and denied adequate medical treatment. Compl. ¶ IV, Pamela J. Moses v. Phyllis Gardner, Case No. 2:14-cv-2763-JDT-dkv (Sept. 9, 2014), ECF No. 1. The court dismissed Moses's claims based on judicial immunity. R&R, Order, & Judgment, Pamela J. Moses v. Phyllis Gardner, Case No. 2:14-cv-2763-JDT-dkv, ECF Nos. 9, 13, 16. Moses appealed the dismissal to the Sixth Circuit but her appeal was dismissed for failure to prosecute.[15]

---

[15]Since filing the present lawsuit on September 12, 2014, Moses has filed ten more related federal lawsuits:

1.   Notice of Removal, Gardner v. Moses, Case No. 2:14-cv-02714-SHL-dkv (W.D. Tenn. Sept. 15, 2014)(dismissed for lack of subject matter jurisdiction and remanded to General Sessions Court);

2.   Notice of Removal, Moses v. Shelby County Sheriff Bill  & Officers, Shelby County Homeland Security and Allied Barton Services, LLC, Case No. 2:14-cv-02715-SHM-dkv (W.D. Tenn. Sept. 15, 2014)(dismissed for improper removal and remanded to Chancery Court of Shelby County Tennessee);

3.   *Pro Se* Complaint, Moses v. Gardner, Case No. 2:14-cv-02763-JDT-dkv (W.D. Tenn. Sept. 29, 2014)(dismissed *sua sponte* for failure to state a claim upon which relief may be granted); *appeal dismissed for want of prosecution*, No. 14-6388 (6th Cir. May 23, 2015);

4.   *Pro Se* Complaint, Moses v. TN Bureau of Investigation, Attorney General, District Attorney, and State of Tennessee, Case No. 2:14-cv-02946-SHL-dkv (W.D. Tenn. Dec. 8, 2014) (dismissed for lack of subject matter jurisdiction and, alternatively, under the *Younger* abstention doctrine and for failing to state a claim for relief);

5.   *Pro Se* Complaint, Moses v. Slatery, Tennessee Attorney General, Case No. 2:14-cv-03024-SHL-dkv (W.D. Tenn. Dec. 30, 2014)(dismissed Moses's habeas petition for failure to exhaust her state court remedies), *appeal dismissed as untimely*, No. 15-5811 (6th Cir. Oct. 13, 2015);

6.   *Pro Se* Complaint, Moses v. Amy Weirich, Richard Desaussure, Bill Oldham, Robert Moore, City of Memphis Police Department, Mayor A.C. Wharton, Does 1-103, Case No. 2:15-cv-2806-JDT-dkv (W.D. Tenn. Dec. 17, 2015)(dismissed *sua sponte* for failure to state a claim), *appeal pending*;

7.   *Pro Se* Complaint, Moses v. Robert Moore, No. 2:16-2104-JTF-dkv (W.D. Tenn. Feb. 16, 2016)(dismissed).

8.   *Pro Se* Complaint, Moses v. Shelby County Government, Allied Barton, Bryce Phillips, Mark Luttrell, Sheriff Bill Oldham, and Debra Fessenden, Case No. 16-2253-JDT-dkv(W.D. Tenn. April 18, 2016)(dismissed *sua sponte* for failure to state a claim), appeal pending.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980)(citation omitted); *see also Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).  To apply the doctrine of res judicata, four elements must be satisfied: (1) the first action must result in a final judgment on the merits by a court of competent jurisdiction; (2) the second action must involve the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the causes of action between the first and the second actions.  *Kane*, 71 F.3d at 560; *see also Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

In this claim, Moses seeks to hold Judge Gardner responsible for the same conduct she alleged in the prior suit,

---

9.      *Pro Se* Complaint , Moses v. Smith, Case No. 2:16-cv-02738-SHL-dkv (W.D. Tenn. Sept. 13, 2016).

10.     *Pro Se* Complaint , Moses v. Oldham, Luttrell, Case No. 2:16-cv-02767-JDT-dkv (W.D. Tenn. Sept. 27, 2016).

In addition, Moses had previously filed a habeas corpus petition in federal court against the Shelby County Sheriff challenging her imprisonment for ten days imposed by Judge Gardner as penalty for contempt of court.  *Pro Se* Complaint, Moses v. State of Tennessee and Shelby County Sheriff Bill Oldham, Case No. 2:14-cv-02225-JTF-dkv (W.D. Tenn. Mar. 31, 2014)(dismissed under the *Younger* abstention doctrine).

*i.e.*, her allegedly false detention and prosecution. The first lawsuit resulted in a final judgment that was dismissed on the merits, it also named Judge Gardner as a defendant, and it involved the same claims she makes in the instant action. Because Moses's instant claim of malicious prosecution arises out of the same facts and transactions that formed the basis for the prior lawsuit against Judge Gardner, her claim is barred by the doctrine of res judicata. Accordingly, the court recommends dismissal of Moses's malicious prosecution claim arising under the Fourth Amendment.

    4.   *RICO Claim*

    In Count VIII, Moses alleges that Judge Gardner violated the RICO Act because she "obstruct[ed] justice and obstruct[ed] a [] criminal investigation," "[gave] several orders to persons to specifically harass and intimidate [Moses]," and tampered with evidence by removing and placing documents in Moses's file. (First Am. Compl. 14, ECF No. 10.) Section 1964(c) of RICO authorizes civil suits and provides in pertinent part that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." Section 1962(c) makes it unlawful "for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

a pattern of racketeering activity.'"  18 U.S.C. § 1962(c); *see also In re ClassicStar Mare Lease Litig.,* 727 F.3d 473, 484 (6th Cir. 2013).   To establish a violation of Section 1962, a plaintiff must show: "(1) there were two or more predicate offenses; (2) the existence of an enterprise; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to business or property as a result of the above three factors. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993)(citing *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274 n.5 (9th Cir. 1988)).

Section 18 U.S.C. § 1961(1) identifies what offenses constitute racketeering activity.   To be actionable, an act must be indictable under the predicate offenses listed in 18 U.S.C. § 1961.  *Frank*, 4 F.3d at 1385.   An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).   An "association-in-fact enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583 (1981).   To establish a pattern of racketeering activity, the plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal

activity.  *Brown v. Cassens Transp. Co.,* 546 F.3d 347, 354 (6th Cir. 2008).

Moses's RICO claim against Judge Gardner is patently frivolous.  Moses has not identified what predicate offense under 18 U.S.C. 1961 Judge Gardner committed.  As to enterprise, there are no factual allegations plausibly suggesting that Judge Gardner and the unidentified defendants formed any type of association which functioned as a "continuing unit," or that the behavior of the defendants is "ongoing" and "coordinated." *Frank*, 4 F.3d at 1386.  There are no allegations plausibly showing some sort of "chain of command" or other evidence of hierarchy, even a highly limited one.  *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 700 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  The complaint in this case contains nothing but conspiracy-style accusations which are insufficient to allege a "certain amount of organizational structure," that functions with a "common purpose." *See Ouwinga*, 694 F.3d at 794 (citations omitted).  As to injury, Moses does not allege that she suffered an injury to her business or property.  Rather, Moses makes a blanket assertion that she is entitled to damages in the amount of 7 million dollars without specifically alleging any economic injuries pertaining to her RICO claim.  (First Am. Compl. 16, ECF No. 10.)  Accordingly, it is recommended that

Moses's RICO claim be dismissed for failure to state a claim upon which relief may be granted.

   5.   *Equal Rights Under the Law, 42 U.S.C. § 1981*

   The presiding district judge has already determined that Moses's reference to 42 U.S.C. § 1981 in the venue section of the First Amended Complaint when combined with Moses's cause of action for interference with contract in both the original and amended complaints (Count V of the First Amended Complaint) and her new claim of civil rights discrimination based on race (Count VII of the First Amended Complaint) constitutes a claim under 42 U.S.C. § 1981. (*See* Order 6, ECF No. 16.) Nevertheless, Moses's § 1981 claim is meritless. Section 1981 provides a federal remedy against discrimination in private employment on the basis of race. *Henry v. Trammell Crow SE, Inc.*, 34 F. Supp. 2d 629, 633 (W.D. Tenn. 1998)(citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975)). To state a claim under § 1981, the "plaintiff must sufficiently allege in his complaint that, in the context of plaintiff's contractual relationship with defendant, (1) plaintiff is a member of a protected class, (2) plaintiff suffered an adverse action at the hands of defendant, (3) plaintiff was qualified to continue in the contractual relationship, and (4) plaintiff was treated differently from others who were similarly situated but who were not members of the protected class. *Person v.*

*Progressive Logistics Servs. LLC*, 418 F. Supp. 2d 1006, 1010–11
(E.D. Tenn. 2006)(citing *Bell v. Ohio State Univ.,* 351 F.3d 240,
253 (6th Cir. 2003)).  Further, the plaintiff "must also allege
that the discrimination by the defendant was intentional."  *Id.*
at 1011 (citing *Bell,* 351 F.3d at 253).

     In support of this claim, Moses alleges in one sentence
that Judge Gardner has engaged in actions that have caused the
termination of Moses's contractual relationships with the Shelby
County Election Commission and the Shelby County Law Library.
(First Am. Compl. 13, ECF No. 10.)   This is insufficient to
state a plausible claim under § 1981.  Moses does not allege
when she was employed with the Shelby County Election Commission
or the Shelby County Law Library or how Judge Gardner interfered
with Moses's employment.  In addition, there are no facts from
which the court can infer that Judge Gardner's alleged
interference with Moses's contractual rights was based on
Moses's race.

     Furthermore, there was no contractual relationship between
Moses and Judge Gardner.  Moses can proceed on a § 1981 claim
based on Judge Gardner's alleged tortious interference with
third parties under only three fairly narrow circumstances.
First, a plaintiff can assert a § 1981 claim against a former
employer's interference with his contract rights.  *Barrow v.
Living Word Church*, No. 3:15-CV-341, 2016 WL 5080416, at *8

(S.D. Ohio Sept. 16, 2016). Second, "courts have allowed a claim where the defendant is so closely intertwined with the third party with which a plaintiff seeks to contract that the defendant 'cannot credibly claim an attenuated and distant relationship' between its discriminatory actions and the adverse action taken by the third party." *Id.* (quotation omitted). Third, courts have allowed a § 1981 claim based on tortious interference "when a defendant 'both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment.'" *Id.* (quotation omitted).

None of these three narrow circumstances are present here. Because Judge Gardner was not Moses's former employer, Moses cannot proceed under the first circumstance. Further, there are no plausible allegations that Judge Gardner is so closely intertwined or has any authority to interfere with Moses's alleged contracts with the Shelby County Election Commission and the Shelby County Law Library. In light of the narrow circumstances under which 42 U.S.C. § 1981 claims based on tortious interference have been allowed, Moses's failure to make such allegations is fatal to her claim. Accordingly, the court recommends that Moses's § 1981 claim based on tortious interference be dismissed.

6.   *Conspiracy, 42 U.S.C. 1985*

In Count IV, Moses alleges that Judge Gardner "conspire[d]
with certain Homeland Security and Shelby County Sheriff
officers to paint [her] in a negative light to heighten a sense
of security to intimidate, detain and harass [her] over the past
7 months." (First Am. Compl. 12-13, ECF No. 10.)  An allegation
of a conspiracy does not itself state a claim for relief under §
1983; the plaintiff must also allege a constitutional
depravation.  *Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006);
*Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000);
*Young v. Cty. of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998).
Thus, without a depravation of a constitutional right,
conspiracy allegations do not give rise to a section 1983 claim.
Because Moses has failed to plausibly allege a federally
protected right of which she was deprived, her conspiracy claim
necessarily fails, and it is recommended that Moses's conspiracy
claim be dismissed.

E.   Moses's State Law Claims

It is recommended that the court decline to exercise
supplemental jurisdiction over Moses's state law claims.  Under
28 U.S.C. § 1367(c)(3), district courts may decline to exercise
supplemental jurisdiction over a claim if it has dismissed all
claims over which it has original jurisdiction.  In the Sixth
Circuit, the policy is that "'[i]f the federal claims are

dismissed before trial, the state claims generally should be dismissed as well.'" *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). The court has original jurisdiction only over Moses's claims arising under federal law, and because dismissal of those claims is recommended, it is also recommended that the court decline to exercise supplemental jurisdiction over Moses's state law claims. Accordingly, it is recommended that Moses's state law claims be dismissed.

F.   Taj' Moses's Claims and Moses's Motion for Appointment of Counsel for Taj' Moses

As previously noted by the Sixth Circuit, "parents cannot appear pro se on behalf of their minor children because a minor's personal cause of action is [his] own and does not belong to [his] parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). Following the remand, Moses filed a motion for appointment of counsel for her minor child Taj' Moses. (ECF No. 47.) Although Moses includes her minor son's name in the style of both the original complaint and the First Amended Complaint, she only references him by name on pages 3 and 13-14 of her sixteen page First Amended Complaint. (First Am. Compl. 3, 13-14, ECF No. 10.) On page 3, with respect to jurisdiction, she states generally that "all acts were committed in Memphis, TN and Shelby County causing injury

47

to Plaintiff Pamela Moses and Taj' Moses in Memphis . . . ."
(*Id.* at 3.)   Later, in Count VI for intentional infliction of
emotional distress, she alleges that "Taj' Moses did have
nightmares because of the continual confusion of thinking the
Sherriff [sic] was going to kill his mommy . . . [he] did wet
the bed the day the Sheriff anonymously appeared at his home . .
.[h]e now hates the Sheriff . . . [he] woke up again from a
nightmare on 9-11-2014 screaming and crying stating the Sheriiff
[sic] was trying to get him."   (*Id.* at 13-14.)   In the relief
section, Moses asks the court for a declaration that the
defendants have "intentionally inflicted emotional distress
against Plaintiffs and her children directly and indirectly."
(*Id.* at 16.)

     To the extent Moses is attempting to bring a claim for
intentional infliction of emotional distress on behalf of her
minor son, she cannot do so because she is not an attorney.   As
a non-attorney, she may appear *pro se* on her own behalf, but she
cannot appear as an attorney for her son.   Moreover, the court
has already recommended herein dismissal of Moses's state law
claims, including the claim for intentional infliction of
emotional distress, if the court dismisses Moses's federal
claims.   It is therefore recommended that Taj' Moses's state law
claim against Judge Gardner be dismissed without prejudice.

On June 6, 2016, Moses filed a motion for appointment of counsel for her minor child Taj' Moses.[16]   (ECF No. 47.) Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." Similarly, under 42 U.S.C. § 2000e-5(f)(1), "upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney."   However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd*, 313 F.3d at 970 ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993)(stating that there is no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993)("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "'a privilege that is justified only by exceptional circumstances.'"   *Lavado*, 992 F.2d at 606 (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)).

In determining whether "exceptional circumstances" exist, courts have examined "the type of case and the abilities of the plaintiff to represent himself."

---

[16]According to Moses's allegations in another recently filed lawsuit, Moses does not have custody of Taj' Moses and did not have custody of Taj' Moses at the time she sought appointment of counsel for Taj' Moses. *Pro Se* Complaint, Moses v. Smith, Case No. 2:16-cv-02738-SHL-dkv (W.D. Tenn. Sept. 13, 2016), ECF No. 1.

> *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir.
> 1987); *see also Poindexter v. FBI*, 737 F.2d 1173,
> 1185 (D.C. Cir. 1984). This generally involves a
> determination of the "complexity of the factual and
> legal issues involved." *Cookish v. Cunningham*, 787
> F.2d 1, 3 (1st Cir. 1986).

*Id.* at 606.[17] Appointment of counsel is not appropriate when a

*pro se* litigant's claims are frivolous or when the chances of

success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752

F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307

F. App'x 963, 965 (6th Cir. 2009)(same).

Here, appointment of counsel in this case for Taj' Moses

would not be appropriate because the court previously

recommended that Taj' Moses's intentional infliction of

emotional distress claim against Judge Gardner be dismissed

without prejudice. Furthermore, even if the court were to

exercise supplemental jurisdiction over the state law claims,

the allegations in the First Amended Complaint do not plausibly

set forth an intentional infliction of emotion claim on behalf

of Taj' Moses against Judge Gardner, and thus, Taj' Moses's

chances of success in this case are very slim. The motion for

appointment of counsel is therefore denied at this time without

prejudice.

G.   Moses's Proposed Second Amended Complaint

---

[17]A plaintiff is not entitled to an evidentiary hearing on
the issue. *Sutton v. Small Bus. Admin.*, 92 F. App'x 112, 116
(6th Cir. 2003).

As stated above, pursuant to the Sixth Circuit order, the court treats Moses's October 7, 2014 "Motion to Leave for Amended Complaint," (ECF No. 10), as her first amended complaint. Therefore, the court will treat Moses's March 30 and June 1, 2015 motions, (ECF Nos. 18 & 23), as motions for leave to file a second amended complaint and Moses's July 22, 2015 filing, (ECF No. 32), as her proposed second amended complaint.

Rule 15(a)(2) provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Under Rule 15(a), the court has some discretion in allowing amendments. Factors to consider include futility of amendments and prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion for leave to amend may be denied for futility if the pleading as amended could not withstand a motion to dismiss. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)(citation omitted). In determining whether Moses's proposed second amended complaint states a claim, the court applies the same standards set forth in this Report and Recommendation.

In her proposed second amended complaint, Moses generally alleges the same facts that she alleged in the First Amended Complaint and sets forth the same causes of action. (*See* Prop.

Sec. Am. Compl., ECF No. 32.)[18]    Moses adds Allied Barton Security Services LLC ("Allied Barton") as a defendant in her proposed second amended complaint.  Moses mentions Allied Barton on only two occasions.  Specifically, Moses alleges that Judge Gardner instructed "Shelby County Homeland Security to have Allied Barton Security to prevent [her] from entry into all court houses causing her to be late and miss scheduled appearances which she has suffered economic losses." (*Id.* at 14.)  Further, Moses alleges that Judge Gardner instructed Allied Barton "to place a photo of [her] at metal detectors to be followed, defame [sic] and humiliated." (*Id.*)

To assert § 1983 claims against Allied Barton, Moses must set forth some factual basis for her claims, either "direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993)).  It is unclear under what legal theory Moses seeks to hold Allied Barton liable.  Moses's

---

[18]In her proposed second amended complaint, Moses requests 10 million dollars in damages (she requested 7 million dollars in the First Amended Complaint), and adds a request for 24 million dollars "to be spent on fair trade projects of individuals of low income and disadvantaged socioeconomic status." (Prop. Sec. Am. Compl. 25, ECF No. 32.)

minimal factual allegations are insufficient to state any claims against Allied Barton.

Furthermore, Moses previously filed another lawsuit against Allied Barton based on their alleged conduct of preventing her from entering public buildings, which is docketed as Pamela J. Moses v. Shelby County Government, et al., Case No. 2:16-cv-2253-JDT-dkv.  In that suit, this court recommended that the court abstain from exercising jurisdiction over Moses's claims against Allied Barton under the *Younger* abstention doctrine, or, in the alternative, that Moses's claims against Allied Barton be dismissed for failure to state a claim.  *See* Report & Recommendation, Pamela J. Moses v. Shelby County Government, et al., Case No. 2:16-cv-2253-JDT-dkv, ECF No. 13.  The presiding judge adopted this court's report and recommendation and dismissed the case.  Order, Pamela J. Moses v. Shelby County Government, et al., Case No. 2:16-cv-2253-JDT-dkv, ECF No. 15.  Moses appealed the case, but the Sixth Circuit dismissed her appeal for want or prosecution.  Order of USCA, Pamela J. Moses v. Shelby County Government, et al., Case No. 2:16-cv-2253-JDT-dkv, ECF No. 21.

Discontented with the judgment of the first suit, Moses seeks to use the present suit to relitigate what has already been determined.  Moses's first suit against Allied Barton resulted in a final judgment on the merits and raised the same

issues that Moses vaguely raises in her proposed second amended complaint.  Therefore, any claims against Allied Barton asserted in Moses's proposed second amended complaint are barred under the doctrine of res judicata.  Because Moses's proposed second amended complaint would not withstand a motion to dismiss, it would be futile to allow Moses to amend her complaint for a second time.  Therefore, the court denies Moses's leave to file a second amended complaint.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Moses's First Amended Complaint be dismissed *sua sponte* for failure to state a claim, that all of Moses's claims against Judge Gardner be dismissed with prejudice *sua sponte* for failure to state a claim, and that all of Taj' Moses's claims against Judge Gardner be dismissed without prejudice.  Moses's motion for appointment of counsel for Taj' Moses is denied.  Moses's motions for leave to file a second amended complaint, (ECF Nos. 18, 23), are denied.

Respectfully submitted this 11th day of October, 2016.


s/ Diane K. Vescovo_____
Diane K. Vescovo
United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of
this report and recommended disposition, a party may serve and
file written objections to the proposed findings and
recommendations.    A party may respond to another party's
objections within fourteen (14) days after being served with a
copy.  Fed. R. Civ. P. 72(b)(2).    Failure to file objections
within fourteen (14) days may constitute a waiver of objections,
exceptions, and further appeal.